UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LYLE MODESTY, | ) | CASE NO. 1:09 CV 1581 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| MICHAEL SHOCKLEY, *et al.* | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On July 10, 2009, *pro se* plaintiff Lyle Modesty filed this action against Cleveland Housing Inspector Michael Shockley, the City of Cleveland, Cleveland Housing Court Judge Raymond Pianka, John Does Cleveland Police Officers, John Does Cleveland Housing Officials, and John Does Cleveland Government Officials. In the complaint, plaintiff alleges his house has been condemned unfairly and is scheduled to be demolished. He seeks $ 2,165,000.00 in monetary damages. Mr. Modesty also filed a Motion for Emergency Injunctive Relief (ECF # 3) on July 13, 2009 asking the Court to enjoin the City of Cleveland from demolishing his home.

**Background**

Mr. Modesty appears to have been cited by the City of Cleveland for various housing code violations. He states he and his mother, Justine Modesty (deceased), have had dealings with the Cleveland Housing Court for the past nine years. A warrant was issued by Judge Pianka, on

March 5, 2009, authorizing officials from the City of Cleveland Building and Housing Department, the Department of Public Safety, the Division of Police and Fire, the Department of Aging, and the Department of Public Health to enter the dwelling located at 3668 East 151 Street, Cleveland, Ohio to "diligently search and inspect the premises, including the exterior and interior, for violations of the Codified Ordinances of the City of Cleveland, and for conditions which are, or may become, hazardous to the general public, and which may be violations of Building, Housing, Health, Fire, and Safety Codes of the City of Cleveland." (Compl. Ex. A.) The warrant was supported by an Affidavit from Cleveland Residential Building Inspector Michael Shockley. The Affidavit indicated Mr. Shockley conducted a visual inspection of the property on March 2, 2009, and observed holes in the roof, deteriorated siding, junk and debris, and deteriorated wood throughout. Mr. Shockley stated he attempted to contact Lyle and Justine Modesty but was unable to reach them.

Cleveland Housing Inspectors and police officers executed the Housing Court inspection warrant on March 9, 2009 at 12:30 p.m. He contends he was preparing to wash his laundry when he heard voices in his kitchen. He entered the room to investigate and found several Cleveland police officers walking around his house. He indicates that when he questioned their presence in his home, the officers drew their weapons and ordered him to comply with their instructions. Although Mr. Modesty does not elaborate on this allegation, he claims he lost a shoe "in the commotion." (Compl. at 13.) He claims he was handcuffed and removed from the residence. As he was being escorted from the house, Mr. Modesty overheard Mr. Shockley inform the police that the house was being condemned and boarded.

Mr. Modesty was driven to the psychiatric unit of St. Vincent Charity Hospital by

the police officers . He contends the officers told him he could not return to his house or he would be arrested for trespassing. Mr. Modesty was questioned by doctors at the hospital, subjected to a blood test, and then released hours later. He indicates he had nowhere to go, and became homeless. He asserts that the incident was "retaliatory and part of an ongoing harassment of the plaintiff by several government departments and bureaucrats within the government of the City of Cleveland." (Compl. at 14.) He further states that a car and van were removed from his driveway without prior written notification. He believes his property may be set for demolition as early as July 13, 2009. Mr. Modesty asserts he was denied due process and challenges the validity of the administrative warrant. He states that there was no emergency to justify his immediate eviction and that his property was seized without a trial. He states his residence is a private home and, therefore, cannot be deemed a public nuisance. He concedes that "by Ohio law, the court of original jurisdiction would be the Cleveland Municipal Housing Court;" however, because he is suing Judge Pianka, Mr. Shockley, and other members of the Housing Department, he feels he will not get a fair and impartial hearing. (Compl. at 2.) He asserts he was denied procedural and substantive due process.

Mr. Modesty also contends the warrant used to enter and inspect his property contained inaccurate and misleading information and, therefore, lacked probable cause. He claims Mr. Shockley did not attempt to contact Mr. Modesty or his mother, as Mr. Shockley stated in the affidavit supporting the administrative warrant. He also claims the affidavit does not describe with particularity the areas to be searched and what the officers are to observe. He states that the warrant was invalid and the information obtained during the inspection cannot be used to support his eviction or the condemnation of his home.

Finally, Mr. Modesty challenges the execution of the warrant. He claims the warrant was ordered to be executed within 3 days of the date it was signed. Judge Pianka signed the warrant on March 5, 2009. It was executed on March 9, 2009. Mr. Modesty claims the warrant expired and was invalid. He contends that the inspection of his home and his subsequent removal from the property violated his Fourth Amendment rights.

**Analysis**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

**a. Judicial Immunity**

As an initial matter, the claims against Judge Pianka must be dismissed. Judicial officers are absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. A judge will be not deprived of immunity even if the action he or she took was performed in error, done maliciously, or was in excess of his or her authority. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Mr. Modesty contends that Judge Pianka issued a search warrant based on inaccurate and misleading information provided to him by the Housing Inspector. Judge Pianka was acting in his capacity as a judicial officer when he signed the search warrant and the Housing Court has authority under Cleveland Codified Ordinance § 3103.04 to issue warrants for the purpose of inspecting property for health hazards. Even if the warrant is determined to be insufficient, Mr. Modesty does not have recourse against the judge for damages under 42 U.S.C. §1983.

**b. Respondeat Superior**

Mr. Modesty also fails to state a claim for relief against the City of Cleveland John Doe "unknown housing officials"and John Doe "unknown government officials." A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Mr. Modesty claims he is:

> suing those City of Cleveland's governmental officials and or agents, and or those employees of Cleveland's Building and Housing Department, and or Supervisors of the City's Building and Housing Department of the City of Cleveland who entered the plaintiff's

> residence on or about March 9, 2009...[and] any Building and Housing official(s), and or Housing officer(s) who gave authority to any other housing officer(s) and or official(s). and or any other person(s), to enter the home of Lyle Modesty on or about March 9, 2009 or otherwise violate the civil rights of Mr. Modesty.

(Compl. at 6-7) There are no other specific allegations or identification of these individuals in the complaint. The general allegations are insufficient to establish that any housing officials or government officials were personally involved in the alleged violation of Mr. Modesty's constitutional rights.

**c. Procedural Due Process**

Mr. Modesty first claims he was denied due process. The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV sec. 1. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the state of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.* To establish a procedural due process claim under 42 U.S.C. § 1983, Mr. Modesty must establish three elements: (1) that he has or had a constitutionally protected life, liberty, or property interest; (2) that he was deprived of this interest within the meaning of the due process clause; and (3) that the State did not afford him adequate procedural protections. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999). There does not appear to be a question in this case regarding the first two elements of Mr. Modesty's cause of action. He claims to be the owner of the property in question and alleges

that the defendants deprived him of this interest. The only remaining issue before the Court is the adequacy of the process the defendants provided to Mr. Modesty.

Fundamentally, due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). This generally means notice and a hearing prior to a deprivation of life, liberty, or property. *Id.* at 82. There are, however, "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after [the deprivation has taken place]." *Id.* at 82. A prior hearing is not constitutionally required where there is a special need for very prompt action to secure an important public interest and where a government official is responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance. *Id.* at 91.

Under the Cleveland Codified Ordinance, the Director of Building and Housing is authorized to declare an unsafe structure to be a public nuisance and order its repair and/or demolition. C.C.O. § 3103.09(d) and (e). If the condition of the building is deemed to pose an immediate risk to health and safety:

> the Director may ...require ... that the building, structure or a portion of those be vacated, not be reoccupied, or used until the specified repairs and improvements are completed, inspected, and approved by the Director. The Director may cause to be posted at each entrance to the building or structure a notice as follows: "THIS STRUCTURE IS IN A DANGEROUS CONDITION AND HAS BEEN CONDEMNED AND ITS USE HAS BEEN PROHIBITED BY THE DIRECTOR OF BUILDING AND HOUSING." The notice shall remain posted until the required corrections are made or demolition is completed. No person shall remove the notice without written permission of the Director, nor shall any person use or enter the building or structure except for the purpose of making the required corrections or demolishing or effectively boarding the building or structure, or securing the structure under division (d) (4)

of this section.

C.C.O. § 3103.09(f). Protecting citizens from an immediate risk of serious bodily harm emanating from a structurally unsound building falls squarely within those "extraordinary situations" contemplated in *Fuentes*. *Flatford v. City of Monroe*, 17 F.3d 162, 167 (6th Cir. 1994). Mr. Modesty would therefore have a clearly established right to a pre-eviction hearing only in the absence of exigent circumstances. *Parratt v. Taylor*, 451 U.S. 527, 539 (1981). There are no allegations in the complaint concerning the condition of the home.

If the perceived dangerousness of the building justified the City's actions, Mr. Modesty would have to show that the post-eviction process did not provide him with adequate notice of the right to an administrative hearing for a timely review. *Id.* The Cleveland Codified Ordinance provides:

> The owner, agent or person in control ...[with] a right to appeal from the notice and decision of the Director as provided in this section and appear before the Board of Building Standards and Building Appeals at a specified time and place to show cause why he should not comply with the notice. Any notice served by the Director shall automatically become a final order if a written notice of appeal before the Board is not filed in the office of the Board within the time set forth in the notice from the Director. In the absence of an appeal, all actions taken shall constitute a valid exercise of the police powers of the City of Cleveland.

C.C.O. § 3103.09(g). The appeal would serve to stay the demolition. C.C.O. § 3103.20(e)(3). If the owner disagrees with the determination made by the Cleveland Board of Building Standards and Building Appeals, he or she can appeal the decision to the Cuyahoga County Court of Common Pleas, *see* OHIO REV. CODE § 2506.01(A). If the owner is still unhappy with the decision, he or she can appeal that decision to the Ohio Eighth District Court of Appeals. *See* OHIO REV. CODE §2506.04.

In the present case, Mr. Modesty provides no information about the condition of his house, the type of notice he received, or the process which he pursued. He includes a copy of the affidavit for the administrative inspection warrant which lists code violations the building inspector observed on the exterior of the building. He does not dispute these observations, nor does he provide any information on the condition of the interior of the home or the basis upon which the City deemed it unsafe. He also does not provide any indication of the notices he received or elaborate on his interactions with the housing court. He states he and his mother have been involved with the Housing Court for nine years. He suggests he received notice that the property was declared a public nuisance under an emergency provision. He indicates that the Board is incapable of providing due process, because the board is comprised of individuals appointed by the City. He contends, "their [sic] (the Board of Building Standards and Appeals), partiality makes them nothing more than a rubber stamp for the City of Cleveland, and specifically they are a branch of the Building and Housing Department, as is Michael Shockley." (Compl. at 10.) He states, "(n)o matter how the Building and Housing Departments endeavors to pretend that they are an equivalent body to a court of law, they are not. What they are is a rubber stamp for the defendants, and that is all that they are." (Compl. at 11.) He also indicates he was told the demolition of his home would occur as soon as July 13, 2009. These statements indicate that Mr. Modesty received some type of notice. There are no allegations in the complaint to suggest whether that notice was adequate to inform him of the appeals process, whether he declined to utilize that process, or whether he pursued his state remedies and was displeased with the results. The court is left only with Mr. Modesty's conclusion that he was denied due process. Legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual

inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009)("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**d. Substantive Due Process**

To the extent Mr. Modesty asserts a substantive due process claim, it too is subject to dismissal. Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Due process claims of this nature involve official acts which cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a state agent. *Id.* at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id.*

Mr. Modesty does not assert a deprivation of another right specified in the Constitution and does not allege facts suggesting the conduct of the defendants was so severe that it shocks the conscience. Where the plaintiff does not provide facts to support either of these

theories of recovery, his substantive due process claim will survive only if the state's action was not rationally related to a legitimate state interest. *See e.g., Reno v. Flores*, 507 U.S. 292, 301-05 (1993). The state has an important interest in enforcing its state and local housing codes. *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir.1998). Mr. Modesty states his home was condemned, but does not provide any information regarding its condition. There are no facts alleged in the complaint to reasonably suggest that the defendants' actions were not rationally related to this interest.

**e. Fourth Amendment**

In addition, Mr. Modesty claims that the administrative inspection warrant contained inaccurate information and was not executed in a timely manner. He contends therefore that the warrant lacked probable cause and was invalid. An administrative warrant does not require probable cause in the criminal law sense. Rather, administrative probable cause, justifying the issuance of a warrant, "may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular establishment.'" *Trinity Industries, Inc. v. Occupational Safety and Health Review Comm'n*, 16 F.3d 1455, 1463 (6th Cir.1994) (Batchelder, J., concurring)(quoting *Marshall v. Barlow's Inc.*, 436 U.S. 307, 320 (1978)). "A warrant ... would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." *Marshall*, 436 U.S. at 323. In this case, the administrative warrant listed specific evidence of serious housing code violations visible on the exterior of the property; specifically, holes in the roof, deteriorated siding, junk and debris, and deteriorated wood throughout. The

inspection was conducted pursuant to a local ordinance which establishes objective criteria and parameters by which the residence can be observed. The administrative warrant on its face does not violate the Fourth Amendment.

Mr. Modesty also objects to the timeliness in which it was executed. He asserts that the warrant states that it "must be executed within three days" of the date it was issued. Below that, the warrant is dated March 5, 2009. The search warrant return indicates it was received by Mr. Shockley on March 6, 2009 and executed on March 9, 2009. Mr. Modesty contends that the warrant was executed four days after it was signed and was therefore invalid.

Ohio Criminal Rule 45 governs the time computation for the execution of warrants. It dictates that in computing the three day limitation, the day on which the order was issued is not counted. OHIO CRIM R 45(A). Furthermore, weekends and holidays are not included in the computation. OHIO CRIM R 45(A). The warrant was signed by Judge Pianka on Thursday, March 5, 2009. That day is not included in the calculation. The clock began to run on Friday, March 6, 2009. The following two days were Saturday and Sunday, which are not included. Monday, March 9, 2009, the day the warrant was executed was only the second day of the three day limitation period. The execution of the warrant was timely.

Moreover, technical inaccuracies in a warrant do not automatically render unconstitutional searches conducted pursuant to such a warrant. *Knott v. Sullivan*, 418 F.3d 561, 569 (6th Cir. 2005) Rather, the court must consider whether, given the circumstances of the particular case, the search was reasonable. *Id.* Mr. Modesty contends that the Residential Building Inspector stated in the affidavit that he attempted to contact plaintiff's mother by telephone but instead reached Mr. Modesty's sister. He claims that when he later questioned his sister, she denied

-12-

speaking to the Inspector. This inaccuracy, alone, does not affect the existence of probable cause for the inspection. The execution of the search warrant did not violate Mr. Modesty's Fourth Amendment rights.

Finally, liberally construing Mr. Modesty's complaint, it appears he is also asserting that his arrest was without probable cause and in violation of the Fourth Amendment. While this may be a facially viable claim against the police officers who arrested him, the claim cannot be reasonably asserted against the remaining defendants. Mr. Modesty alleges that he was already handcuffed and being led to the police cruiser when he first encountered Mr. Shockley. There are no allegations in the complaint indicating he participated in the arrest. There are no allegations suggesting the Cleveland Housing Officials or the Cleveland Government Officials were in anyway involved in the incident.

**f.  Motion for Emergency Injunctive Relief**

In addition to his complaint, Mr. Modesty filed a Motion for Emergency Injunctive Relief. In the Motion, Mr. Modesty challenges the administrative inspection and the process by which his property was taken. He asks this Court to enjoin the demolition of his home and permit him to reside in it once again. When considering a motion for preliminary injunction, a district court must consider "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir.2007) (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir.2005)). This Court dismissed the underlying legal claims upon which this motion was based.

His claims pertaining to his arrest which remain in this action are not relevant to his motion. The Motion for Emergency Injunctive Relief is **denied.**

## Conclusion

Accordingly, Plaintiff's Motion for Emergency Injunctive Relief (ECF # 3) is **denied**. In addition, his claims against Michael Shockley, the City of Cleveland, Cleveland Housing Court Judge Raymond Pianka, John Doe Cleveland Housing Officials, and John Doe Cleveland Government Officials are dismissed under 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2] This action shall proceed against John Doe police officers and the City of Cleveland solely on Mr. Modesty's Fourth Amendment claim pertaining to his arrest. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants**.**

       IT IS SO ORDERED.

                                     /s/ Patricia A. Gaughan
                                     PATRICIA A. GAUGHAN
                                     UNITED STATES DISTRICT JUDGE

Dated: 8/12/09

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.